Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| MELERY ORTIZ BELTRÁN<br><br>Recurrida<br><br>v.<br><br>RAFAEL ROSADO MALDONADO<br><br>Peticionario | KLAN202400968 | Apelación acogida como *CERTIORARI* Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.: BY2023CV05660<br><br>Sobre: División de Bienes Gananciales |
| --- | --- | --- |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 11 de diciembre de 2024.

El 28 de octubre del año en curso, el señor Rafael Rosado Maldonado (en adelante, señor Rosado) compareció ante este Tribunal de Apelaciones mediante un recurso de *Apelación*[1], en el que solicita la revisión de la *Sentencia Sumaria* dictada el 26 de septiembre de 2024, notificada el 27, por el Tribunal de Primera Instancia, Sala de Bayamón (en adelante, TPI o foro primario). Mediante el referido dictamen, el foro primario declaró Ha Lugar cierta solicitud de sentencia sumaria presentada por él y ordenó la liquidación de la comunidad post ganancial del inmueble de interés en partes iguales y consignó la suma de $5,063.99 a favor de esta, una vez se realice la liquidación, sin la imposición de gastos u honorarios de abogados.

Por las razones que más adelante consignaremos, **denegamos** expedir el auto de *certiorari* solicitado. Veamos.

---

[1] Por las razones que más adelantes se consignarán en la presente *Resolución, a*cogemos la apelación de epígrafe como un *certiorari*, al ser el recurso adecuado para la revisión de la determinación recurrida. Ahora bien, para fines administrativos, mantenemos la codificación alfanumérica que la Secretaría de este foro le asignó al caso.

-I-

Las partes del pleito de epígrafe se encuentran legalmente divorciados mediante sentencia final y firme en el caso civil núm. DDI-2005-1529, emitida el 26 de enero de 2006 y notificada el día 31. El 11 de octubre de 2023, la Sra. Melery Ortiz Beltrán Ortiz (en adelante señora Ortiz) presentó una *Demanda* sobre división de bienes gananciales en contra del señor Rosado ante el TPI. En dicha demanda, alegó que durante la vigencia del matrimonio las partes adquirieron bienes y deudas gananciales. Debido a esto, solicitó al foro primario que dividiera y adjudicara todos los bienes gananciales en igualdad de derechos y obligaciones por mitad. Además, solicitó que se atribuyeran por mitad los bienes acumulados y las ganancias o beneficios obtenidos indistintamente por cualquiera de los excónyuges mientras estuvo vigente el matrimonio.

El 5 de diciembre de 2023, el peticionario presentó su *Contestación a Demanda* y **Reconvención**. (énfasis suplido). En su breve contestación, el señor Rosado aceptó que las partes se encuentran legalmente divorciados y que durante la vigencia del matrimonio adquirieron bienes y deudas gananciales. Además, alegó que las partes conocen que el inmueble es el único bien ganancial y que conocen las deudas gananciales con sus balances.[2] Por su parte, en su *Reconvención*, alegó que, durante la vigencia del matrimonio, las partes adquirieron un inmueble sito en la Urbanización Santa María, C9 Calle 2, Toa Baja, Puerto Rico, con un valor actual de tasación de $132,000.00. Así mismo, se expuso que al realizar la compraventa hipotecaron el inmueble con RG Premier Bank por $70,000.00 con interés al 10%, según surge de la escritura núm. 222 del 6 de noviembre de 2000, ante el Notario Ahmed R. Arroyo Romeu. Por esta línea, el peticionario adujo que, en el momento del divorcio, las deudas de la Sociedad Legal de Bienes Gananciales Rosado-Ortiz (SLG) eran las

---

[2] El señor Rosado no describe o hace referencia al inmueble en su *Contestación a Demanda*.

siguientes: (1) Hipoteca con RG Premier Bank con un balance de $63,985.10; una deuda con la Asociación de Empleados de AEELA con un balance adeudado de $42,275.00; y otra con el Sistema de Retiro de Empleados de la UPR por la suma de $40,060.94. Según alegado, las mismas constituían una deuda total de $146,321.04 y estas excedía el *equity* del inmueble por $14,321.04 y fueron pagadas en su totalidad por el señor Rosado.[3] Por consiguiente, este reclamó que la señora Ortiz le adeudaba la suma de $7,160.51.

El 20 de diciembre de 2023, la apelada presentó su *Contestación a Reconvención*. En esta, la señora Ortiz adujo que no le consta que las deudas alegadas por el peticionario sean carga de la extinta SLG. A su vez, alegó que no están listados todos los dineros gananciales que existían al momento del divorcio y a los cuales tiene derecho.

Así las cosas, el 10 de julio de 2024, el señor Rosado presentó una *Moción en Solicitud de Sentencia Sumaria*. En esta, alegó que, para la fecha del divorcio, la deuda con AEELA originalmente indicada por $42,275.00 fue ajustada a $38,575.00 y que la deuda con el Sistema de Retiro originalmente indicada por $40,060.94 se ajustó a $31,587.68. Debido a esto, según reclamó, al liquidar la comunidad post-ganancial, existe una ganancia de $10,127.98 de la cual le corresponde a cada comunero una suma de $5,063.99. A su vez, alegó que en el presente pleito no existía controversia sustancial sobre los hechos esenciales y pertinentes del mismo, por lo que solo restaba aplicar el derecho.

Luego de presentarse la solicitud de sentencia sumaria, la representación legal de la señora Ortiz renunció. Por ello, el TPI le concedió plazo para adquirir nueva representación legal, así como para oponerse al

---

[3] El peticionario hace la salvedad que la hipoteca aún tiene un balance de cancelación de $39,075.38 para la fecha del 4/28/23.

escrito sometido. Pese a esto, la señora Ortiz no se opuso a la *Moción en Solicitud de Sentencia Sumaria* del señor Rosado.

El 13 de septiembre de 2024, por su parte, el señor Rosado presentó escrito titulado *Moción en Solicitud de Sentencia*. En este, indicó que transcurrió el término concedido para que la señora Ortiz compareciera por derecho propio o a través de un representante legal sin que así lo hubiera hecho. Por tanto, y a tenor con la *Orden* del TPI, la *Solicitud de Sentencia Sumaria* se entendía sometida sin oposición.

El 26 de septiembre de 2024, y notificada el día siguiente, el foro primario dictó *Sentencia Sumaria*. Allí, formuló la siguiente relación de hechos:

1. La vista del divorcio de las partes se celebró el 16 de diciembre de 2005 y la Sentencia fue notificada el 31 de enero de 2006, según surge de la evidencia en autos.

2. El único bien inmueble en comunidad posganancial que requiere ser dividido es el inmueble sito en Urbanización Santa María, C9 Calle 2, Toa Baja, Puerto Rico, con un valor actual de tasación de $132,000.00.

3. Al momento del divorcio existían deudas gananciales en la Asociación de Empleados de AEELA, en el Sistema de Retiro de Empleados de la UPR y el préstamo hipotecario.

4. La deuda con AEELA, que originalmente se había indicado era por $42,275.00 fue ajustada a $38,575.00 y la del Sistema de Retiro que originalmente se indicó es de $40,060.94 se ajustó a $31,587.68 por los balances a la fecha de divorcio.

5. Al 16 de julio de 2010, cuando Oriental Bank adquirió la hipoteca del inmueble, el balance era de $69,985.10. Dicho balance fue el utilizado para la liquidación de la comunidad de bienes.

6. Luego de los ajustes antes señalados, la ganancia ("equity") al liquidar la comunidad posganancial es de $10,127.98. De esta suma le corresponde a cada comunero la cantidad de $5,063.99.

Luego de esto y de exponer el derecho aplicable, el foro primario consignó que en virtud de la prueba documental en apoyo de las alegaciones, declaraba Ha Lugar la solicitud de sentencia sumaria y, sin la imposición de gastos u honorarios de abogados, ordenó lo siguiente:

1. El Alguacil General comparecerá para la otorgación de la Escritura de Liquidación de la Comunidad Posganancial del inmueble sito en la Urbanización Santa María, C9 Calle 2 Toa Baja,

Puerto Rico, cuyo valor de tasación es de $132,000.00 y sea dividido en partes iguales entre Melery Ortiz Beltrán y Rafael Rosado Maldonado.

2. El demandado consignará la suma de $5,063.99 a favor de la demandante Melery Ortiz Beltrán, una vez se otorgue la Escritura de Liquidación de la Sociedad Posganancial.

Inconforme, el 2 de octubre de 2024, el peticionario presentó *Moción en Solicitud de Enmienda de Sentencia* en la que alegó que las deudas adquiridas por la SLG habían sido pagadas por él. Ante esto, expuso que se rebajó de la participación de la señora Ortiz en el inmueble el 50% de todos los pagos realizados por el peticionario y que, como resultado, al liquidar la comunidad solo le correspondería a la señora Ortiz la suma de $5,063.99, mientras el inmueble quedaría inscrito únicamente a su favor.

El 18 de octubre de 2024, el TPI emitió una *Orden* en el cual declaró un No Ha Lugar la solicitud de enmienda sometida por el señor Rosado. Aún insatisfecho, el 28 de octubre de 2024, este acudió ante nos y le imputó al TPI la comisión de los siguientes errores:

Primer Error: El Honorable Tribunal de Primera Instancia, Sala de Bayamón erró al dictar Sentencia Sumaria disponiendo que:

1. "El Alguacil General comparecerá para la otorgación de la Escritura de Liquidación de la Comunidad Post-Ganancial del inmueble sito en la Urbanización Santa María, C9 Calle 2, Toa Baja, Puerto Rico, cuyo valor de tasación es de $132,000.00 y sea dividido en partes iguales entre la Sra. Melery Ortiz Beltrán y el Sr. Rafael Rosado Maldonado.

2. El demandado consignara la suma de $5,063.99 a favor de la demandante Melery Ortiz Beltrán, una vez se otorgue la Escritura de Liquidación de la Sociedad Post-Ganancial."

Segundo Error: El Honorable Tribunal de Primera Instancia, Sala de Bayamón erró al no reducir de la participación de la Recurrida en el inmueble, todos los pagos efectuados por el Recurrente para saldar las deudas de la Sociedad Legal de Gananciales Rosado-Ortiz, que le correspondían a la Recurrida.

Atendido el recurso, el 31 de octubre de 2024, notificada el 7 de noviembre del año en curso, emitimos una *Resolución* en la que concedimos a la señora Ortiz hasta el 27 de noviembre de 2024, para presentar su alegato en oposición. Al día de hoy, la señora Ortiz no ha comparecido, por lo que

damos por sometido el asunto sin el beneficio de su comparecencia, según allí le fue advertido podríamos hacer.

-II-

*A.*

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. Rivera et al. v. Arcos Dorados et al., 212 DPR 194, 195 (2023) al citar a McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de certiorari descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición de un auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Rivera et al. v. Arcos Dorados et al., *supra,* a la pág. 207-208. La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos

revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." *Íd.*

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. 800 Ponce de León v. AIG, 205 DPR 163 (2020). Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Los criterios previamente transcritos pautan el ejercicio sabio y prudente de la facultad discrecional judicial. Mun. de Caguas v. JRO Construction, 201 DPR 703, 712 (2019). La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." Scotiabank v. ZAF Corp. et al., *supra*, págs. 486-487; Mun. De Caguas v. JRO Construction, *supra*.

*B.*

La Regla 42.1 de Procedimiento Civil, 32 LPRA Ap. V R. 42.1, define sentencia como cualquier determinación del TPI que resuelve finalmente la cuestión litigiosa y de la cual pueda apelarse. Cuando un tribunal emite una

sentencia, se adjudican las controversias habidas en un pletio y se definen los derechos de las partes. Peerles Oil v. Hermanos Pérez, 186 DPR 239 (2012), al citar a Cárdenas Maxán v. Rodríguez, 119 DPR 642, 656 (1987). Las resoluciones, en contrario, no adjudican la totalidad de una reclamación, sino que "ponen fin a un incidente dentro del proceso judicial, ya sea antes o después de dictarse la sentencia". *Id.*

Cuando un pleito comprende más de una reclamación, entre otras razones por razón de una reconvención, puede dictarse sentencia final en cuanto a una o más de las reclamaciones sin disponer de la totalidad del pleito, **siempre que expresamente se concluya que no existe razón para posponer el que se dicte sentencia hasta la resolución total del pleito y se ordene expresamente el registro de la sentencia**. Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3.

Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a transcurrir en lo que a ella respecta los términos dispuestos en las Reglas 43.1, 47, 48 y 52.2 de Procedimiento Civil.[4] (citas omitidas). **Si el tribunal no cumple con estos requisitos, el dictamen emitido constituye una resolución interlocutoria revisable por este Tribunal de Apelaciones mediante el recurso de *Certiorari*.** Ello así, pues no se trata de una sentencia final. Rosario et al. v. Hosp. Gen. Menotita, Inc., 155 DPR 49 (2001).

-III-

A través de la breve discusión de sus errores, el señor Rosado aduce que la *Sentencia Sumaria* dictada en el pleito debe ser revocada, pues no reconoce su derecho a reclamar que se deduzca de la participación de la señora Ortiz aquellos créditos que tiene a su favor por los pagos efectuados

---

[4] Véase Regla 42.3 de Procedimiento Civil, *supra.*

por él en cuanto a ciertas deudas gananciales. Específicamente, afirma que se le está privando recobrar $60,936.01.

Al leer la *Sentencia Sumaria* emitida en el caso con el fin de atender los planteamientos del señor Rosado, advertimos que mediante este dictamen el tribunal no dispuso de la totalidad del pleito, pues no atendió ni resolvió las alegaciones específicas levantadas por el señor Rosado en su Reconvención sobre los créditos que tiene a su favor.

Si bien los tribunales pueden, dentro de los pleitos que comprenden más de una reclamación, disponer de en cuanto a una o más de las reclamaciones, según arriba citamos, ello podrá ser así **siempre que expresamente se concluya que no existe razón para posponer el que se dicte sentencia hasta la resolución total del pleito y se ordene expresamente el registro de la sentencia**. La *Sentencia Sumaria* dictada no incluyó el lenguaje sacramental que debió contener para que pueda constituir una sentencia, según definida por ley.

Lo anterior causa que la reconvención del señor Rosado permanezca pendiente de adjudicación y que la sentencia emitida trate realmente de una determinación interlocutoria a ser revisable únicamente mediante el recurso de *certiorari* regulado por la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V R. 52.1.[5], por lo que acogemos el recurso como tal.

Así acogido, consideramos que no están presente ninguno de los escenarios establecidos en la Regla 52.1 de Procedimiento Civil que autorizan la expedición del auto de *certiorari*. Tampoco identificamos algún criterio, de aquellos enumerados por la Regla 40 de nuestro Reglamento, que nos muevan a intervenir. Siendo ello así, denegamos expedirlo.

Como es sabido, una resolución denegatoria de un auto de *certiorari* no implica posición alguna del Tribunal respecto a los méritos de la causa

---

[5] En consideración a ello, y como ya adelantamos, acogemos el recurso de epígrafe como un *certiorari*, aunque conserve su identificación alfanumérica.

sobre la cual trata dicho recurso. Por consiguiente, no estamos en el día de hoy adjudicando si procede o no la reconvención sometida por el señor Rosado. Nuestra denegatoria simplemente es indicio de la facultad discrecional de negarnos a revisar en determinado momento una decisión emitida por el tribunal de instancia. *Véase*, Cacho Pérez v. Hatton Gotay, 195 DPR 1, 12 (2016) al citar a SLG v. Pauneto Rivera, 130 DPR 749, 755 (1992) y otros.

-IV-

Por lo fundamentos antes expuestos, *denegamos* el recurso de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones